UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– against –

TATIANA DANIEL,

                  Defendant.

**STATEMENT OF REASONS FOR SENTENCE**
15-CR-00166 (JBW)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 1 3 2016 ★
BROOKLYN OFFICE

**Appearances**

    **For United States:**

        Robert L. Capers
        United States Attorney, E.D.N.Y.
        By: Michael Robotti

    **For Defendant:**

        John M. Burke
        26 Court Street
        Suite 2805
        Brooklyn, NY 11242

JACK B. WEINSTEIN, Senior United States District Judge:

## Table of Contents

I. Introduction ...........................................................................................................1
   A. Instant Offense: Conspiracy to Promote Prostitution.................................2
   B. Arrest..........................................................................................................4
   C. Guilty Plea .................................................................................................4
   D. Sentencing..................................................................................................5
II. Offense Level, Category, and Sentencing Guidelines Range............................5
III. Law.....................................................................................................................6
IV. 18 U.S.C. § 3553(a) Considerations...................................................................7
V. Support of a Below Guidelines Sentence by Prosecution..................................9
VI. Sentence ...........................................................................................................10
VII. Conclusion .......................................................................................................10

### I. Introduction

Defendant Tatiana Daniel was charged in a one-count information with commercial sex trafficking of minor female victims between the ages of 12 and 15. *See generally*, Information, Apr. 30, 2015, ECF No. 46. She pleaded guilty to conspiring to promote prostitution in violation of section 371 of Title 18 of the United States Code.

Born in Brooklyn, New York, defendant is 21 years old. Her parents separated after a brief relationship when she was still a baby. Because of conflicts with her mother, she moved to North Carolina at the age of 18 to live with her godparents. She continued high school there and traveled to Brooklyn for spring break during her senior year. Daniel never returned to North Carolina. Instead, she resided with a friend in Brooklyn, eventually falling in with the wrong crowd and becoming involved in the charged actions. This is her only criminal conviction.

Defendant is sentenced to time served of 18 months in prison, three years of supervised release, and $100 special assessment. She shall register as a sex offender and will suffer the collateral consequences of a felony conviction.

1

### A. Instant Offense: Conspiracy to Promote Prostitution

In May of 2013, defendant was staying in a friend's apartment. Presentence Investigation Report ("PSR") ¶ 48. Then 19, there she met co-defendants Shandale Franklin and Brian Adams. *Id.* ¶ 7; Addendum to the Presentence Report ("APR") ¶ 5. The co-defendants hold themselves out as husband and wife; Adams was a relative of defendant's friend. *Id.*; PSR ¶ 7; Def.'s Letter, Oct. 7, 2015, ECF No. 54, at 1.

Franklin and Adams were recruiting school girls to work as prostitutes for older males at parties to be hosted by the couple. PSR ¶ 7. Adams pressured Daniel to find girls for the planned sex parties. She was threatened by Adams that if she failed to do so, she would have to find another place to live. Def.'s Letter, Oct. 7, 2015, at 1.

Defendant became a full participant in this sordid scheme to turn minors into prostitutes. She told the victims that her "uncle" threw the parties, which occurred several times a year; the males would be doctors, lawyers, and teachers, and the girls would be generously compensated for participating. The victims were encouraged to bring their friends. Defendant was to be compensated based on the number of girls she was able to recruit. PSR ¶ 6.

Between January 11 and 19, 2014, Daniel had conversations with Franklin on Facebook regarding a sex party that was to take place that month. She sent her co-defendant a photograph of an unidentified female she was recruiting. The female appears to have been a minor. Daniel said the individual was willing to work as a prostitute at a party and that she would try to recruit three more girls. She also sent Franklin a photograph of another unidentified female who was probably underage, asking, "She good?" Franklin confirmed that she was, and Daniel responded that she would attempt to recruit her and additional girls. *Id.* ¶ 8.

On January 12 and 13, 2014, defendant told Adams through Facebook that she had seven girls willing to work at a party, including two who wanted to meet and begin working with

2

Adams the next day. *Id.* ¶ 10. She sent Adams photographs of the potential victim-"entertainers," who were 12, 13, and 17 years old. APR ¶ 5. Adams expressed his concern that one of the girls was "too big," but agreed to meet her. PSR ¶ 10.

In the meantime, Franklin and Adams were recruiting on their own young girls, as well as clients. *Id.* ¶¶ 11-12. Franklin told an unnamed individual that she was looking for clients to attend an "anything goes type of party." The individual stated that he knew of interested men. *Id.* ¶ 11.

Franklin advised Daniel on January 20, 2014 that Adams had cancelled the sex party because of a lack of available girls. *Id.* ¶ 8.

The following month, Franklin contacted Daniel and told her she had a client from London and needed three girls to choose from. Defendant initially told Franklin she had two girls, but then informed her that the victims decided not to perform as prostitutes. Franklin told Daniel to try to contact others, including a girl she had previously met through defendant. *Id.* ¶ 9.

On March 27, 2014, a 13-year-old victim of the prostitution conspiracy met with an agent of the Federal Bureau of Investigation (FBI) and detectives of the New York Police Department (NYPD). The girl stated that Daniel told her she could earn $800 per night working at a club. Defendant had told the victim that the club had multiple rooms, including a room where pole dancing took place. The victim would be paid throughout the night to have coital and oral sex. Because the parties took place during the day, Daniel said the girl would have to skip school. The victim also stated that she and a 14-year-old friend of hers were introduced to a client through Daniel. *Id.* ¶ 4.

In the course of the investigation, a 16-year-old victim stated to law enforcement agents that Daniel told her about a sex party her "father" threw several times a year, and that girls attended these parties to have sex for money with doctors and teachers. Defendant attempted to recruit this victim. The victim states that Daniel also encouraged her to become a recruiter. She was told that any female who had sex at these parties would make $2,000. Of that amount, $500 would go to the victim, and Daniel would receive a percentage of the $500. Defendant advised this victim that it would be better for her to have sex at a party than to become a recruiter. She allegedly said, "If you get the girls to come, you have to get your money three days later. If you go yourself, you get the money that day." APR ¶ 20.

A 19-year-old told agents that Daniel asked her on Facebook if she wanted to make money on "scams." This victim then met defendant in person. Daniel told the girl that she could make money with her "uncle," and offered to introduce the girl to him. Defendant told the victim she could make $250 for one hour of sex, $300 for anal sex, $350 for oral sex, and up to $500. The girl initially agreed to go on dates that Daniel set up, but later decided against going on the dates. Defendant continued to pressure the girl, telling her she had dates ready. But the victim never went. *Id.* ¶ 21.

### B. Arrest

Daniel was arrested on December 10, 2014. She admitted recruiting female minors to engage in prostitution. *Id.* ¶ 14.

### C. Guilty Plea

On April 30, 2015, defendant pleaded guilty to conspiring to promote prostitution in violation of section 1952(a)(3)(A) of Title 18 of the United Stated Code. PSR ¶ 20; Plea Hr'g Tr., Apr. 30, 2015, ECF No. 48, at 14:3-18. No mandatory minimum term of imprisonment applies; the maximum term of imprisonment is five years. *See* 18 U.S.C. § 371; PSR ¶ 68.

### D. Sentencing

The sentencing proceedings were videotaped to develop an accurate record of courtroom atmosphere, as well as the factors and considerations that a court evaluates in imposing a sentence. *See* 18 U.S.C. § 3553(a); *see also In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

## II. Offense Level, Category, and Sentencing Guidelines Range

Defendant's base offense level is 24. APR ¶ 57. Her criminal history category is I. PSR ¶ 41. The offense level was increased by 2 points pursuant to U.S.S.G. §2G1.3(b)(3)(A) because defendant used a computer to recruit the minor victims to engage in prohibited sexual conduct; decreased by 3 points under U.S.S.G. §2X1.1(b)(2) because the victims did not attend a sex party or engage in prostitution; increased by 4 points pursuant to a multiple count adjustment; reduced by 2 points pursuant to U.S.S.G. §3E1.1(a) because defendant has demonstrated acceptance of responsibility; and decreased by an additional point under U.S.S.G §3E1.1(b) because defendant notified the government of her intention to enter a guilty plea in a timely manner. *Id.* ¶¶ 58-70.

The total offense level of 24 yields a Guidelines sentencing range of 51 to 63 months. *Id.* ¶ 71. Because the statutory maximum is five years, the Guideline imprisonment range is 51 to 60 months. *See* U.S.S.G. §5G1.1(a).

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart from them in the interest of justice as well as in the light of other statutory concerns as expressed in section 3553(a) of Title 18. 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now . . . emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct

5

its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.").

## III. Law

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of Title 18, the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now advisory rather than mandatory, *see Booker*, 543 U.S. at 245-46, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *Cavera*, 550 F.3d at 193 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society and our economy, parsimony in incarceration is to be prized. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and*

*Consequences*, 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

IV. **18 U.S.C. § 3553(a) Considerations**

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). For the reasons stated on the record, any custodial sentence beyond the 18 months already served in pre-trial detention is unnecessary. *See* Sentencing Hr'g Tr., June 23, 2016.

Daniel's raising by a "single mother" was generally appropriate. She lived with her mother and grandmother in Brooklyn in a middle-income household devoid of any abuse. In November 2012, her mother sent her to North Carolina to live with her godparents. Defendant says her mother made this decision because she was not attending school, respecting home rules, or returning at appropriate times. Defendant describes her time in North Carolina as "fine." After she moved, Daniel's mother moved to Pennsylvania. PSR ¶ 48. She maintained regular contact with defendant. *Id.* ¶ 49.

Daniel's father initially stayed in touch with her. She states that her parents argued over child support, prior issues in their relationship, and why Daniel did not have her father's last name. As a result of these conflicts, defendant claims her mother made it difficult for her father to visit her. When Daniel was 10 years old, her father "gave up" on visiting her, but continued to provide child support. According to defendant, she attempted to reach him via email, but he was reluctant to correspond because "Mom would get mad." At the time of her arrest, Daniel had not spoken to her father for four years. *Id.* ¶ 50.

Defense counsel contacted Daniel's mother and father to inform them of her arrest. Her mother, who works as an executive assistant, became extremely upset. *Id.* ¶¶ 47, 49. Defendant

7

claims that her mother, now living in Queens, "could not believe it would get this far," and is doing "everything she can" for Daniel. *Id.* ¶ 49. The mother emails defendant every day.

Defendant plans to eventually reside with her mother; but this assignment is not certain. Daniel says she has learned her lesson and that she would not be in this predicament if she had listened to her mother—a sign of increasing wisdom. *Id.*

Upon learning of her arrest, defendant's father reached out to her and has maintained contact. *Id.* ¶ 50. He currently lives in Brooklyn and works as a meter reader for Con Edison. *Id.* ¶ 47. The father provides financial assistance. Daniel believes their relationship is "building." *Id.* ¶ 50.

Defendant has attempted to educate herself. She attended Gotham Professional Arts Academy in Brooklyn from 2008 to 2012. *Id.* ¶ 59. In November 2012, she transferred to South Granville High School of Health and Life Sciences in Creedmoor, North Carolina, where she studied from December 2012 until April 2013. She did not graduate, and failed to return from spring break. *Id.* ¶ 58. She obtained a General Education Development (GED) degree while in custody at the Metropolitan Detention Center in Brooklyn. *Id.* ¶ 57. During her incarceration, she completed the following courses: Female Finance, Crochet, Theater Appreciation, and Pre Trial. *Id.* ¶ 52.

She has worked off and on from a young age. She earned tips packing groceries when she was 10 or 11 years old. *Id.* ¶ 64. When 17, she worked as an after-school math and reading tutor during her winter and summer holidays. *Id.* ¶ 63.

She reports full-time employment before her arrest as a sales associate at 2Cute, a clothing store in Brooklyn. Daniel said she felt discriminated against as the only black employee, so she resigned. *Id.* ¶ 62. She claims that she worked at Macy's as a seasonal

employee during the Christmas season in late 2014; was terminated after her employer learned of a warrant issued for her arrest in an unrelated state criminal case (which did not result in a conviction). *Id.* ¶¶ 61, 43.

She has no assets. *Id.* ¶¶ 66-67.

Daniel has never married. She has no children. She is not currently in a long-term romantic relationship. *Id.* ¶ 51.

The defendant reports no physical or mental health problems. *Id.* ¶¶ 54-55. She has consumed alcohol since she was 16 and used marijuana since she was 17. She does not believe her alcohol or drug use has ever been a problem. *Id.* ¶ 56.

Her sentence is well planned. Upon release from custody, defense counsel has arranged for the defendant to reside at Rockaway Houses, a safe transitional residence for females who are currently homeless. There, defendant may receive counseling, vocational advice, and assistance in applying for social services benefits. She must be drug free. Def.'s Letter, June 9, 2016, ECF No. 62, at 1; Court Ex. 1, June 23, 2016 (Rockaway Houses brochure).

## V. Support of a Below Guidelines Sentence by Prosecution

At the sentencing hearing, the government expressly did not object to a below Guidelines sentence. Two FBI agents appeared at the hearing to convey their support for defendant. *See* Sentencing Hr'g Tr., June 23, 2016.

Without this support from the government—which was based on her rehabilitation, young age, the amount of time already served in pre-trial detention, and the fact that her recruited victims never engaged in the planned sex parties—defendant would have been sentenced to five years in prison. Recruiting school girls as young as twelve years for prostitution cannot be countenanced by our society.

9

## VI. Sentence

Under section 3553(a)(2)(B) of Title 18, a sentencing court must consider two major factors: general and specific deterrence.

In light of the nature of her offense and characteristics, Daniel is sentenced to time served of 18 months in prison and three years of supervised release with special conditions, among others, as follows: 1) she shall comply with the sex offender registration requirements mandated by law; 2) she shall refrain from contacting any victims of the instant offense; and 3) she shall not possess a firearm, ammunition, or destructive device. A $100 special assessment is imposed. *See* 18 U.S.C. § 3013. No fine is levied because defendant has no assets and is unlikely to be able to pay a fine. PSR ¶¶ 66-67.

General and specific deterrence are achieved by the sentence imposed. Daniel has already served 18 months in prison. She will suffer the collateral consequences of a felony conviction and sex offender registration, as well as the restrictive conditions of a three-year supervised release term.

## VII. Conclusion

All relevant elements of the Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of Title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: July 7, 2016
Brooklyn, New York

10